

FILED

SEP 01 2023

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA



CV 23 - 4524

MARTIN NUNEZ-PALOMAREZ,

Plaintiff,

v.

VERIZON COMMUNICATIONS INC.,

Defendant.

Case No.:

EMPLOYMENT DISCRIMINATION COMPLAINT

## INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to redress unlawful employment practices on the basis of race, national origin, and retaliation by Verizon and or those acting on its behalf.

## PARTIES

Plaintiff Martin Nunez-Palomarez is a resident of Lathrop, CA, San Joaquin County, State of California. At the time of employment he was employed in San Francisco, San Francisco County, California; Under 8 CFR 274a.12(c)(33), Martin who has been granted deferred action under 8 CFR 236.21 through 236.23, Deferred Action for Childhood Arrivals, received employment authorization and maintained legal authority to work during the period of the events or omissions in the claim.

Defendant Verizon Communications Inc. is a multinational telecommunications conglomerate and a corporate citizen of the state of New York. Verizon is registered to do business in the State of New Jersey and maintains "operational headquarters" located at One Verizon Way, Basking Ridge, New Jersey 07920.3 Verizon is a "person" as defined by 15 U.S.C. § 1681a(b).

VENUE

Venue is appropriate in the Northern District of California United States District Court, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. § 1391. Venue is proper in the Northern District of California United States District Court as a substantial part of the events or omissions giving rise to the claim occurred in San Francisco, California.

PROCEDURAL REQUISITES

Within 300 days of the occurrence of the acts complained of, Plaintiff filed his initial complaint with the Equal Employment Opportunity Commission alleging that the Defendant had committed unlawful employment practices against the Plaintiff. The formal charge and the "Dismissal and Notice of the "Right to File Civil Action Letter" were filed and received as follows:

Formal Complaint Filed: August 16, 2022

Notice of Right to File A Civil Action Letter Received: June 6, 2023

On June 6, 2022, Plaintiff received from the United States Equal Employment Opportunity Commission, Plaintiff's Dismissal and Notice of Rights letter allowing the Plaintiff to file this lawsuit within ninety days of its receipt. A copy of this notice is attached as Exhibit "A" and is incorporated for all purposes by reference. Plaintiff's statutory claims were filed within ninety days of its receipt. Plaintiff further invokes the relation back theory as well as any and all equitable doctrines necessary to satisfy the administrative requirements set forth by law. All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

FACTUAL ALLEGATIONS

Background and Employment History:

Martin Nunez-Palomarez is a person receiving Deferred Action for Childhood Arrivals (DACA). If he is convicted of a felony offense, a misdemeanor offense described in 8 CFR 236.22(b)(6), or 3 or more other misdemeanor offenses not occurring on the same date and not arising out of the same act, omission, or scheme of misconduct, he will not be considered for DACA under 8 CFR 236.21-236.25.

Mr. Nunez-Palomarez alleges that Verizon has engaged in discriminatory and retaliatory practices against him after he reported inside dealings in the Business to Business (B2B) sector with Todd Mundy as Director, Heath Owensby as Associate Director, Brian Davidson as HR Specialist and Anais Sanchez as HR Manager.

Initial Employment and Discrimination:

In July 2019, Mr. Nunez-Palomarez was selected to join the San Francisco Team A. He had applied for and was under the impression that he would be assigned to the "Rincon Hill" territory in San Francisco. However, despite his qualifications and expectations, the company made a last-minute change, assigning him instead to the "Inner Mission" territory. Disturbingly, this marked the second instance where Mr. Nunez-Palomarez was bypassed for a more desirable position within the B2B leadership team in San Francisco. Given the

circumstances and the lack of a clear, non-discriminatory reason for these decisions, Mr. Nunez-Palomarez perceived these actions as discriminatory in nature.

Mr. Nunez-Palomarez continued to ask Management for an opportunity to progress out of the "Inner Mission" onto any of the other vacant territories: Tenderloin 2020, Dogpatch 2020, Financial District 2020, Rincon Hill 2021.

Mr. Nunez-Palomarez works a double territory starting March 2021, Rincon Hill and Inner Mission.

In March 2021, Mr. Nunez-Palomarez approached HR with two significant concerns. Firstly, he reported suspicions of commissions fraud involving kickbacks and commission splitting within the Verizon San Francisco (Team A) and its association with Premier Wireless Solutions Inc (PWS) a third party company. Simultaneously, he expressed concerns about potential discriminatory practices he experienced during his onboarding. He conveyed his belief that his unique characteristics, particularly his language skills, were the primary reasons he was placed in his current role, even though language proficiency was not a listed qualification for the position it remained the reason for keeping Mr. Nunez-Palomarez in the Inner Mission module. In response, HR Specialist Brian Davidson assured Mr. Nunez-Palomarez that lateral positions should be based on qualifications and not on extraneous characteristics. He elaborated that with the same title and experience any rep can fill the role across the organization regardless of any additional secondary characteristics. This interaction with HR illuminated for Mr. Nunez-Palomarez the discriminatory undertones of his initial placement within the team.

By May 2021, the seniority ranking within Mr. Nunez-Palomarez's team was unambiguously delineated: Ferdinando Penn was at the forefront with 22 years, succeeded by Johnny Chung with 9 years, then Mr. Nunez-Palomarez with 2 years, and finally Jeff Jardeliza with 1.5 years. In spite of this transparent hierarchy, Mr. Nunez-Palomarez consistently found himself sidelined when new territories became available. Notably, each time a position emerged, Ferdinando Penn was consistently the first to be consulted, followed by Johnny Chung irrespective of the module's location. This repeated exclusion led Mr. Nunez-Palomarez perceived such practices as discriminatory, feeling that he was systematically denied opportunities aligned with his seniority status.

Retaliation and Discriminatory Practices:

In or around June 2021, Martin was presented with an opportunity for a lateral move to the "Tenderloin" territory. However, upon evaluating the condition of the new module, he observed that the Tenderloin territory was in significant disarray and would require even more effort and attention than his current "Inner Mission" module. Martin perceived this offer as a retaliatory move, believing he was being set up for a more challenging role in response to prior events. Consequently, he declined the offer, opting to remain in the "Inner Mission".

In October 2021, Martin was appointed as an acting manager, serving as the Managing Partner for San Francisco California's Team A. This appointment came through Heath Owensby and was endorsed by senior coworker, Johnny Chung. However, during his tenure as Managing Partner, Martin observed a concerning pattern: he was consistently excluded from any calls or communications with Premiere Wireless Solutions (PWS). Given the context of his recent protected activities and the importance of these calls to his role, Martin perceived this exclusion as a retaliatory action, designed to hinder his performance and marginalize him within the team.

In October 2021, seizing an opportunity to solidify his role, Martin, with the support of Associate Director Jason Swensen, applied and subsequently interviewed for the position of Managing Partner for Team A in San Francisco. The interview was conducted by Todd Mundy and Heath Owensby. However, shortly after this process, in a surprising turn of events, Johnny Chung confided in Mr. Nunez-Palomarez. He revealed that following a discussion with Heath Owensby earlier that day, he had decided to withdraw his application for the position, despite it having been informally offered to him. This sudden change raised concerns for Martin, hinting at possible internal dynamics or pressures that might be influencing the selection process.

In October 2021, Martin's aspirations to become the senior manager were seemingly thwarted by a sudden shift in strategy. Heath Owensby reached out to Martin, unveiling a new plan to hire a manager, not in San Francisco where Martin was based, but in Santa Rosa, California. To further complicate matters, Owensby's plan involved relocating the current Santa Rosa manager, Jeff Kinsey, to the San Francisco Team A – the very position Martin had set his sights on. Perceiving this as a deliberate move to undercut his chances, Martin promptly communicated his concerns regarding the hiring practices in the San Francisco work group to Brian Davidson. In response, Brian coordinated with both Todd and Heath to arrange a meeting to discuss and provide feedback on Martin's concerns of further discrimination and retaliation.

In November 2021, to Martin's dismay, Jeff Kinsey was publicly announced as the new manager for San Francisco Team A. Despite being an active candidate in the application process, Martin was notably overlooked. He was not granted a second interview for the Santa Rosa position, which was eventually filled by Mel Panosky. Martin perceived this omission not as an oversight, but as a deliberate act of retaliation, especially given his active candidacy and previous interactions with the management.

In November 2021, Mr. Nunez-Palomarez attended a feedback session with Todd Mundy and Heath Owensby regarding his recent interview. To his dismay, the meeting took a concerning turn. Instead of providing constructive feedback based on the content and substance of the interview, or addressing any specific performance concerns, the focus was shifted entirely. Heath and Todd conveyed that Mr. Nunez-Palomarez's challenges in progressing were attributed to the perceptions of other Managing Partners and those at higher echelons. This feedback, devoid of any tangible or objective criteria from the interview, was not only unproductive but also felt hostile. The underlying message, as perceived by Mr. Nunez-Palomarez, was clear: his differences, whether in background, race, or other unique characteristics, were the barriers to his advancement.

In December 2021, Mr. Nunez-Palomarez identified discrepancies in his commission statement, with half of the missing amounts rectified by month's end. He learned from Jeff Kinsey that these commissions were directly overseen by Heath Owensby. Despite assurances of their return, the delay and oversight in such a critical financial matter led Martin to perceive this as a deliberate act of retaliation by Heath, especially given the importance of these items.

In January 2022 Mr. Nunez-Palomarez was formally introduced to a Performance Improvement Plan based on the average performance of the last three months.

In January 2022, Mr. Nunez-Palomarez was informed by PWS that his commissions were not reported correctly for December 2021.

In January 2022, Mr. Nunez-Palomarez detected irregularities in his commission statement. Despite Heath Owensby and Todd Mundy acknowledging the missing commissions following an investigation, no corrective action was taken by month's end. Mr. Nunez-Palomarez perceived this oversight, which represented half of his quota, as retaliation and a deliberate neglect of his financial concerns and other ramifications stemming from this neglect.

In February 2022, despite Mr. Nunez-Palomarez's exemplary sales performance, achieving over 140% of the target while under the Performance Improvement Plan (PIP), he was surprisingly given a continuation of the PIP. This time, the justification was based on alleged insufficient documentation in the Customer Relationship Management Database. Martin perceived this as a strategic move to persist with the PIP, further reinforcing his belief that there were ulterior motives to push him out.

In February 2022, as a response to the commission discrepancies Mr. Nunez-Palomarez identified in January, he was provided a list of numbers to claim as compensation. This move came after Heath Owensby and Todd Mundy recognized the missing commissions but failed to rectify the situation by the end of January. Mr. Nunez-Palomarez viewed this delay and the subsequent offer, which accounted for half of his quota, as a retaliatory gesture and a clear indication of their disregard for his well-being.

On March 4, 2022, during a celebratory call for the year 2021, Mr. Nunez-Palomarez experienced a blatant display of discrimination tied to national origin. As Heath Owensby discussed a finance document, he made a derogatory comment about a colleague, Joel Valencia, referring to him as a "pending illegal" just as Joel joined the call. This inappropriate remark was met with enthusiasm by some participants, while Todd Mundy chose to ignore the comment and continue the call as if nothing had transpired. Mr. Nunez-Palomarez perceived this incident as a clear act of retaliation and a reflection of the discriminatory attitudes within the company.

On March 4, 2022, after the derogatory comment made by Heath Owensby during a call, Mr. Nunez-Palomarez reached out to Joel Valencia to discuss the incident. Joel shared that Heath had called him to apologize for the inappropriate remark. Interestingly, Joel hadn't directly heard the comment due to a delay when joining the call, but he was made aware of it through colleagues. Despite the apology, it was evident that Heath's perception of Joel was influenced by his immigration status. Furthermore, Joel revealed he was awaiting a promotion to Casey Moore's team, leading both him and Mr. Nunez-Palomarez suspected that the derogatory comment might have been a form of retaliation or an attempt to undermine Mr. Nunez-Palomarez.

On March 14, 2022 Mr. Nunez-Palomarez had a meeting with Heath. Heath Heath made  a few comments not limited to his ability to PIP anyone he wanted and his ability to block any FMLA that I would attempt to use. Heath was then informed that I would be taking leave but for Paternity at the beginning of April 2022. Heath then expressed the similarity of the previous experience of his attempt to PIP Matt Tabor Managing Partner and Matt going out on Paternity Leave to avoid his PIP.

On March 15, 2022 Mr. Nunez-Palomarez had a meeting with Heath and Jeff Kinsey Managing Partner, the meeting was hostile and not focused on any particular line of business. Heath attempts to explain the PIP for January and for February.

On March 17, 2022 Mr Nunez Palomarez had a meeting with Anais Sanchez, Anais presented the facts of the PIP as articulated to her using a non standard and Non Verizon Excel Spreadsheet. When prompted to compare my score using the missing Commissions for the months, the SQI from PWS, and the Backordered

iPads, she is told she cannot do that. When asked if she can share the spreadsheet so that I could review the numbers, she also said she could not do that. Once that is concluded, I move forward to report the incident on the call from March 4, 2022 where Heath calls Joel a "Pending Illegal". Anais then moves to take action towards Heath Owensby.

Through the end of March 2022 Heath had no contact with Mr. Nunez-Palomarez.

At the beginning of April 2022 Mr. Nunez-Palomarez leaves on paternity leave.

On or about April 2022 Mr Nunez-Palomarez spoke to Anais Sanchez about the incident with Heath Owensby and asked if that was retaliation. Anais Said she would investigate this problem.

On or about May 2022 while still on paternity leave Mr Nunez-Palomarez has a followup meeting with Anais regarding the retaliation question. Anais said she did not have time to investigate the claim and that she would go ahead and now go investigate the claim of retaliation.

On or about May 2022 a member of the Verizon Team reached out to get an update on my I-9 renewal and how Mr. Nunez-Palomarez needed to submit the documentation before the I-9 Deadline.

On or about June 2022 Mr. Nunez-Palomarez had to return to work due to a paternity leave scheduling error. Martin was scheduled to work for two weeks before his

On or about August 16, 2022 Mr, Nunez-Palomarez formally filed a complaint with the EEOC.

On or about late August 2022 while on paternity leave, I met with Anais again and asked about the retaliation investigation and if there was a conclusion. Anais told Mr Nunez-Palomarez that her investigation led to the conclusion that there was no retaliation.

Resignation and Post-Employment Interactions:

In or about late August or early September, Mr Nunez-Palomarez returned to work from paternity leave.

On or about September 7 2022, Mr. Nunez-Palomarez submitted a 14-day notice regarding his resignation over the list of grievances listed on the email sent to Todd Mundy, Heath Owesnby, and Anais Sanchez. On the list of grievances are the hiring practices, commissions discrepancies, harassment by associate director, and lack of customer service in his work module. Including 14 new accounts that were overlooked while Mr Nunez-Palomarez was on paternity leave.

On or about  the week of September 11-17, Mr. Nunez-Palomarez met with Anais a few times. In these meetings Anais went through the list of grievances and offered resolutions like a meeting with absentee Director Todd Mundy. While on the meeting with Todd Mundy, Mr. Nunez-Palomarez was given an opportunity to talk to Todd about 1) The pardon from performance offered in December for those with qualifying product purchases 2) The problems in the CRM that led to my pip in February 2022 and whether or not the team was aware of the logging errors in the system when submitting records outside of your work module 3) Whether he thought or had any concerns about Heath Owensby before these challenges with Mr. Nunez-Palomarez started surfacing.

In September 2022, after having previously submitted a 14-day notice of resignation, Mr. Nunez-Palomarez formally requested, via email, to withdraw his resignation. In response, Anais Sanchez informed Mr. Nunez-Palomarez that Verizon had chosen to proceed with the initially proposed resignation date. Crucially, Ms. Sanchez explicitly cited Mr. Nunez-Palomarez's initiation of an investigation with the EEOC as the reason for Verizon's refusal to allow the withdrawal of his resignation. This direct linkage between the EEOC investigation and the adverse employment action suggests a retaliatory motive on the part of Verizon.

On or about the week of September 16-21 Mr Nunez-Palomarez meets with Anais Sanchez multiple times. Anais asked him if there was anything I wanted in exchange for a silence agreement. I asked if I could have a Verizon Franchize license. She then told me that Verizon would want nothing to do with me and that she was speaking more about a monetary settlement. I then told her that I had no thought about it but that we could have a follow-up meeting to discuss what I thought.

On or about the finals weeks of September Mr Nunez-Palomarez had a call with Anais Sanchez. Anais asked him if he had a number in mind. Mr. Nunez-Palomarez told Anais he thought they would have an offer. Anais reached out again and informed Mr Nunez-Palomarez that Verizon was no longer interested in offering anything on this matter.

CAUSES OF ACTION

FIRST CAUSE OF ACTION: Discrimination Based on National Origin

Plaintiff Martin Nunez-Palomarez re-alleges and incorporates by reference all preceding paragraphs. Defendant Verizon Communications Inc. engaged in unlawful employment practices by discriminating against the Plaintiff based on his national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, and other compensable damages.

SECOND CAUSE OF ACTION: Retaliation

Plaintiff Martin Nunez-Palomarez re-alleges and incorporates by reference all preceding paragraphs. Defendant Verizon Communications Inc. engaged in unlawful employment practices by retaliating against the Plaintiff for engaging in protected activities, including but not limited to reporting suspected commissions fraud and discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. As a direct and proximate result of the Defendant's retaliatory practices, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, and other compensable damages.

THIRD CAUSE OF ACTION: Discrimination Based on Race

Plaintiff Martin Nunez-Palomarez re-alleges and incorporates by reference all preceding paragraphs. Defendant Verizon Communications Inc. engaged in unlawful employment practices by discriminating against the Plaintiff based on his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. As a direct and proximate result of the Defendant's discriminatory practices, Plaintiff has suffered and continues to suffer emotional distress, humiliation, embarrassment, and other compensable damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Martin Nunez-Palomarez respectfully requests that the Court grant the following relief:

A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

An injunction to prevent the Defendant and its officers, employees, agents, successors, and assigns, and all persons in active concert or participation with them, from engaging in discriminatory employment policies and practices.

Back pay, including benefits and interest, to make the Plaintiff whole.

Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Punitive damages to punish the Defendant for its malicious and reckless conduct and to deter the Defendant and others from similar conduct in the future.

Attorney's fees, expert witness fees, and other costs of this action.

Such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff Martin Nunez-Palomarez hereby demands a trial by jury on all issues so triable.

DATED: 08/21/2023

Martin Nunez-Palomarez

1878 Plumas Dr

Lathrop CA 95330

209-227-7771

mnunez-palomarez@ucmerced.edu

Plaintiff, In Pro Per